UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| HOUSTON SPECIALTY INSURANCE COMPANY and SCOTTSDALE INSURANCE COMPANY, | |
| Plaintiffs, | CIVIL ACTION NO. |
| v. | 1:19-CV-03319-CAP |
| THE FIVE PACES INN CO. and ANNALEE HUNTER, | |
| Defendants. | |

## O R D E R

The plaintiffs filed this declaratory judgment action under 28 U.S.C. §§ 2201 and 2202, seeking a declaration as to their rights, if any, under two insurance policies they issued to defendant The Five Paces Inn Co. Specifically, Hunter sued Five Paces Inn in the State Court of Fulton County, and the plaintiffs are asking this court whether they have a duty to defend or indemnify Five Paces Inn in the underlying lawsuit. Hunter filed a motion to dismiss [Doc. No. 12] arguing that this court should either find a duty to defend exists as a matter of law or, alternatively, exercise its discretion and decline to hear the case. Five Paces Inn also filed a motion to dismiss [Doc.

No. 13], arguing that this court lacks subject matter jurisdiction because there is no actual controversy between the parties. Both motions are ripe for adjudication. Also before the court is Hunter's motion to stay discovery [Doc. No. 25] pending a ruling on the defendants' motions to dismiss. That motion is DENIED AS MOOT.

## I.    Relevant Background

Hunter sued Five Paces Inn in a lawsuit styled *Annalee Hunter v. The Five Paces Inn Co.*, Case No. 18EV002873, filed in the State Court of Fulton County. In this underlying lawsuit, Hunter asserts claims for premises liability, negligence per se, and negligence, while also seeking punitive damages and attorney's fees. The underlying lawsuit alleges that Hunter and several female friends were patrons at Five Paces Inn's bar one evening. At approximately 2:00 a.m., while Hunter was in the restroom, the bar began to shut down and Hunter's friends were asked to leave the premises. When Hunter exited the restroom, a bartender served her a drink and a "blue shot," one or both of which were "unsafe" or "unwholesome" and incapacitated Hunter. Her friends attempted to reenter the bar and retrieve her but were

denied access. Meanwhile, a Five Paces Inn' bartender later identified as Enrique Robles[1] took advantage of Hunter's incapacity and raped her.

At the time of the assault, Five Paces Inn had two commercial liability insurance policies, one issued by each plaintiff. Its primary policy was the Commercial General Liability Policy issued by Houston Specialty Insurance Company ("HSIC"), Policy No. HOSPK1000111-02. Five Paces Inn also carried a secondary policy, its Commercial Umbrella Policy issued by Scottsdale Insurance Company ("Scottsdale"), Policy No. UM 1942898. HSIC, the issuer of the primary policy, is currently defending Five Paces Inn in the underlying lawsuit under a reservation of rights. Once HSIC's policy limits are exhausted, the Scottsdale umbrella policy would begin to provide coverage for Five Paces Inn, in accordance with its policy limits and exclusions.

The HSIC policy has general liability and liquor liability limits of $1,000,000 per occurrence or each common cause. But it excludes from this coverage injuries arising out of an assault or battery incident. Instead, it provides separate coverage for such injuries in the amount of $25,000 for each assault or battery incident, with an annual aggregate $25,000 sublimit.

---

[1] Robles was originally a defendant in this action but was dismissed without prejudice for lack of service [Doc. No. 31].

The $25,000 sublimit is subject to erosion by the costs of defending the insured against any lawsuit alleging assault or battery. Furthermore, the policy's assault and battery coverage excludes coverage for injuries arising out of a sexual assault or claims for punitive damages.

The Scottsdale umbrella policy has liability limits of $1,000,000 per occurrence and $1,000,000 in the aggregate, in excess of the HSIC policy. The policy provides that, unless otherwise directed, the same exclusions applicable to the underlying insurance—the HSIC policy—apply to the Scottsdale policy. It further states that any loss covered by the underlying policy under a sublimit, as opposed to the full liability limits, is excluded from coverage under the Scottsdale policy unless the policy specifically says otherwise. Finally, the Scottsdale policy has an exclusion for injuries or damages arising from an assault or battery and for claims seeking punitive damages.

## II.    Five Paces Inn's Motion to Dismiss [Doc. No. 13]

Five Paces Inn moved for dismissal under Rule 12(b)(1), alleging this court lacks subject matter jurisdiction of this action because it does not present and actual controversy.[2] When ruling on a Rule 12 motion, courts

---

[2] The Eleventh Circuit has held that district courts should resolve jurisdictional issues prior to deciding a case on its merits. *See, e.g., Univ. of S.*

usually credit as true the facts alleged in the complaint. Here, however, Five Paces Inn has challenged this court's subject matter jurisdiction by arguing that, under the specific facts of this case, the court lacks jurisdiction. This is known as a factual challenge, where a district court can "consider extrinsic evidence such as deposition testimony and affidavits." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). "In so doing, a district court is free to weigh the facts and is not constrained to view them in the light most favorable to the plaintiff." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335–36 (11th Cir. 2013) (quotations omitted).

## A.    Additional Background

Five Paces Inn and the plaintiffs both point to evidence outside the complaint—mainly correspondence between the parties relating to the defense of the underlying lawsuit—to support their arguments for or against jurisdiction. These additional facts, however, are not disputed:

- On August 8, 2018, HSIC agreed to defend Five Paces Inn in the underlying lawsuit under the HSIC policy's assault and battery coverage and corresponding $25,000 eroding sublimit [Doc. No. 13-1].

- On January 29, 2019, HSIC sent Five Paces Inn a letter indicating the $25,000 sublimit was exhausted and it no longer had a duty to defend or indemnify Five Paces Inn with regard to the underlying lawsuit.

---

*Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999); *Fitzgerald v. Seaboard Sys. R.R.*, 760 F.2d 1249, 1251 (11th Cir. 1985) (per curiam).

HSIC indicated it would withdraw its defense of Five Paces Inn effective February 28, 2019 [Doc. No. 13-1].

- On February 28, 2019, Five Paces Inn retained new counsel in the underlying lawsuit [Doc. No. 13-2].

- After retaining new counsel, Five Paces Inn received a letter from HSIC—dated February 26, 2019—reiterating its position that the $25,000 assault and battery coverage is the only coverage potentially applicable to the Hunter lawsuit, but that HSIC decided—after receiving a letter from Hunter's counsel challenging its decision to terminate its defense of Five Paces Inn—to "temporarily provide Five Paces Inn with a courtesy defense in the *Hunter* lawsuit" but "reserve[d] the right to withdraw from the defense of Five Paces Inn at any time and seek reimbursement of defense costs" [Doc. No. 13-3].

- On March 1, 2019, the newly retained counsel for Five Paces Inn responded to HSIC, indicating that they were assuming the defense of the underlying lawsuit and that, under Georgia law, HSIC must either accept coverage unconditionally or continue to defend Five Paces Inn, up to the amount of the remaining coverage parts in the policy subject to an appropriate reservation of rights [Doc. No. 13-4].

- On March 8, 2019, HSIC indicated that it was willing to resume providing Five Paces Inn with a defense under a reservation of rights in the underlying lawsuit [Doc. No. 13-5].

- On June 17, 2019, after some discussion between HSIC and Five Paces Inn, HSIC agreed to continue defending Five Paces Inn, subject to a reservation of rights, in the *Hunter* lawsuit [Doc. No. 13-5].

## B.    Legal Analysis

The determination of whether an actual case or controversy exists

under the Declaratory Judgment Act is made on a case-by-case basis. *Am.*

*Ins. Co. v. Evercare Co.*, 430 F. App'x 795, 798 (11th Cir. 2011) (per curiam)

(citing *GTE Directories Pub. Corp. v. Trimen America*, 67 F.3d 1563, 1567

(11th Cir. 1995)). The Eleventh Circuit has stated that the difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is "necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy." *GTE Directories, id.* (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273 (1941)). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*

Five Paces Inn argues that, because HSIC took the position that the $25,000 assault and battery coverage is the only coverage in its policy potentially applicable to the *Hunter* lawsuit, and that sublimit has been exhausted, there is no controversy left for this court to decide. It claims that HSIC has denied coverage and cannot now ask the court to test the viability of its decision through this declaratory action, as that would produce nothing more than an advisory opinion. It then cites several cases where insurers' declaratory actions were dismissed because they denied coverage in the underlying suit.

HSIC acknowledges that it did originally deny coverage and withdraw its defense after costs exceeded $25,000, but it later reversed this position and is currently providing Five Paces Inn with a defense, under a reservation of rights, in the underlying lawsuit. And the Georgia Supreme Court has held that, in cases brought under Georgia's declaratory judgment act, "an insurer is not estopped from changing its position after an initial denial of coverage and is allowed to seek declaratory judgment in those situations where the insurer has both indicated its willingness to reconsider its insured's claim and has positively demonstrated that it considers the question of coverage to still be in issue, e.g., by undertaking a defense of its insured under a reservation of rights." *Drawdy v. Direct Gen. Ins. Co.*, 586 S.E.2d 228, 230 (Ga. 2003). *See also Colonial Ins. Co. of California v. Progressive Cas. Ins. Co.*, 556 S.E.2d 486, 488 (Ga. Ct. App. 2001) (holding that an insurer who initially denied a claim, but began defending its insured under a reservation of rights once a lawsuit was filed against its insured, could properly seek a declaratory judgment on its duty to defend). Under this scenario, "[t]he question of coverage is still in issue" and a declaratory action may proceed. *Colonial Ins., id.*

While this action is brought under the federal Declaratory Judgment Act, the court agrees with the reasoning in *Drawdy* and finds that the totality

8

of the circumstances shows that there is a substantial controversy between the parties. On March 8, 2019, HSIC—despite previously denying coverage—indicated a willingness to reconsider defending Five Paces Inn. Then, on June 7, 2019, "HSIC agree[d] to continue defending Five Paces Inn subject to a reservation of rights as set forth in [its] March 8, 2019 letter." Because HSIC is currently defending—and has expended more than $25,000 on that defense—it now properly seeks a declaratory judgment addressing its duty to continue doing so, among other things.

Having determined that this action presents an actual controversy, the court turns to Five Paces Inn's alternative request that the court utilize its discretion and abstain from exercising jurisdiction and hearing the case. While a district court does have the discretion to decline to hear declaratory actions, that discretion has limits, and the Eleventh Circuit set forth nine factors to consider when deciding whether to abstain from federal jurisdiction. *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1331 (11th Cir. 2005).[3] Subsequently, the Eleventh Circuit has held that a "district

---

[3] These include: (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; (2) whether the judgment in the federal declaratory action would settle the controversy; (3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue; (4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing," that is,

court abuse[s] its discretion by declining to exercise jurisdiction [over a declaratory action] without considering adequately the relevant factors [identified in *Ameritas*]." *First Mercury Ins. Co. v. Excellent Computing Distributors, Inc.*, 648 F. App'x 861, 866 (11th Cir. 2016). Five Paces Inn, however, fails to even mention—let alone analyze—these nine factors in support of its argument. And the court concludes that these factors do not weigh in favor of declining to entertain the entire action. Five Paces Inn has not shown that abstaining from hearing this matter would be the judicious decision.

For these reasons, Five Paces Inn's motion to dismiss [Doc. No. 13] is DENIED.

---

to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable; (5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; (6) whether there is an alternative remedy that is better or more effective; (7) whether the underlying factual issues are important to an informed resolution of the case; (8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action. *Ameritas*, 411 F.3d at 1331.

### III.    Annalee Hunter's motion to dismiss [Doc. No. 12]

Next, Hunter seeks to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) and (6) for lack of subject matter jurisdiction and failure to state a claim. She argues that HSIC has a duty to defend the underlying lawsuit as a matter of law—negating the need for a declaratory action—and therefore its claims regarding its duty to defend should be dismissed. She also sets forth a facial challenge to this court's jurisdiction under Rule 12(b)(1), arguing that issues regarding the plaintiffs' duty to indemnify and Scottsdale's potential coverage under the excess policy are not yet ripe.[4]

### A.    Legal Standard

A motion to dismiss under Rule 12(b)(6) is proper where the moving party demonstrates that the plaintiff can prove no plausible set of facts in support of his claim that would entitle him to relief. FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*,

---

[4] Unlike the factual jurisdictional challenge brought above, a facial challenge requires only that the court determine if the complaint sufficiently alleges a basis for subject matter jurisdiction, taking as true the allegations in the complaint. *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009).

550 U.S. 544, 570 (2007). In order to state a plausible claim for relief, the

Supreme Court has stressed that the Federal Rules of Civil Procedure

"demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me

accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, a plaintiff is

obligated "to provide the 'grounds' of his 'entitlement to relief,' [which]

requires more than labels and conclusions." *Twombly*, 550 U.S. at 555.

When faced with a motion to dismiss for failure to state a claim in a

declaratory action, and the insurer's duty to defend is at issue, the district

court must determine whether the allegations in the underlying complaint

trigger a duty to defend. *See, e.g. Nat'l Tr. Ins. Co. v. Finishing Dynamics,

LLC*, No. 1:18-CV-0351-AT, 2018 WL 8949791, at *5 (N.D. Ga. Sept. 18, 2018)

(holding, while ruling on a motion to dismiss, "at this stage it appears [the

insurer] does have a duty to defend, at very least, because *the allegations of

the underlying complaint* do not unambiguously exclude coverage") (emphasis

added); *Evanston Ins. Co. v. Dillard House, Inc.*, No. 2:16-CV-249-RWS, 2017

WL 3498953, at *8 (N.D. Ga. June 28, 2017) (granting motion to dismiss for

failure to state a claim because "*the allegations on the face of the Underlying

Lawsuit* at least raise the possibility that the [insured's] claims against the

[defendants] could come within coverage"). This is done because (1) in

Georgia, an insurer's duty to defend is based on the allegations made in the

complaint against its insured; and (2) the court may consider any document attached to the complaint as part of the allegations—such as the underlying complaint—so long as that document is central to the plaintiffs' claim and its authenticity is undisputed. Any other approach would permit an insurer to file a declaratory action and then, in its own complaint, recite or summarize the underlying allegations in such a way that precludes coverage.

### B.    Duty to Defend

"To determine whether a claim against an insured falls within the insured's coverage and gives rise to a duty to defend, the Court must compare the relevant policy language against the allegations of the underlying complaint 'to determine whether a liability covered by the policy is asserted.'" *Nat'l Tr. Ins. Co.*, 2018 WL 8949791, at *5 (quoting *Penn-Am. Ins. Co. v. Disabled Am. Veterans, Inc.*, 481 S.E.2d 850, 852 (Ga. Ct. App. 1997), *aff'd*, 490 S.E.2d 374 (Ga. 1997) ("*Penn-Am. Ins. I*"); *Travelers Prop. Cas. Co. of Am. v. Kansas City Landsmen, L.L.C.*, 592 F. App'x. 876, 882 (11th Cir. 2015) (citing *Nationwide Mut. Fire Ins. Co. v. Somers*, 591 S.E.2d 430, 433 (Ga. Ct. App. 2003)). If the facts as alleged in the underlying complaint "bring the occurrence even arguably within the policy's coverage, the insurer has a duty to defend the action." *Penn-Am. Ins. I*, 481 S.E.2d at 852. No duty to defend exists if the allegations in the underlying complaint "unambiguously exclude

coverage under the policy." *E.g., Penn-Am. Ins. Co. v. Disabled Am. Veterans, Inc.*, 490 S.E.2d 374, 376 (Ga. 1997) ("*Penn-Am. Ins. II*").

In Georgia, an insurer's duty to defend is broader than its duty to indemnify. *Shafe v. Am. States Ins. Co.*, 653 S.E.2d 870, 873 (Ga. Ct. App. 2007) (citing *Penn-Am. Ins. I*, 481 S.E.2d at 852). So "[a]lthough an insurer need not indemnify an insured for a liability the insured incurs outside the terms of the insurance contract, an insurer must provide a defense against any complaint that, if successful, might potentially or arguably fall within the policy's coverage." *Elan Pharm. Research Corp. v. Employers Ins. of Wausau*, 144 F.3d 1372, 1375 (11th Cir. 1998); *Penn-Am. Ins. II*, 490 S.E.2d at 376 ("[T]he duty to defend exists if the claim potentially comes within the policy.") (emphasis added). "Where the claim is one of potential coverage, doubt as to liability and [the] insurer's duty to defend should be resolved in favor of the insured." *Penn-Am. Ins. II*, *id*.

Hunter first claims that HSIC's declaratory action is due to be dismissed because the policy establishes there is "potential" or "arguable" coverage for her false imprisonment claim. *Cf. id.* ("[T]he duty to defend exists if the claim potentially comes within the policy . . ."). Specifically, she argues "the underlying complaint at least 'potentially' pleads false imprisonment," that this false imprisonment claim does not "arise out of" the

assault—a requirement under the policy for the $25,000 assault and battery sublimit to apply—and therefore the HSIC policy's $1,000,000 coverage limit applies. She also avers that, in the underlying action, "[t]he agreed-upon [pretrial order] recognizes that the claims alleged in the original complaint include false imprisonment."

The plaintiffs counter that Hunter did not include a false imprisonment claim in her complaint. After a review of the underlying complaint [Doc. No. 1-2], the court agrees. Hunter, in enumerated counts, asserts claims for (1) premises liability; (2) negligence per se; and (3) negligence in the complaint. A false imprisonment claim is nowhere to be found; there is no enumerated false imprisonment count and the factual allegations in her complaint do not otherwise support a false imprisonment claim. *See Penn-Am. Ins. I*, 481 S.E.2d at 851 ("the issue is whether a *claim has been asserted* which falls within the policy coverage and which [the insurer] has a duty to defend") (emphasis added). Under Georgia law, the intentional tort of false imprisonment "arise[s] out of words, acts, gestures, or the like, which induce a reasonable apprehension that force will be used if [the victim] does not submit; and it is sufficient if they operate upon the will of the person threatened, and result in a reasonable fear of personal difficulty or personal injuries." *Mitchell v. Lowe's Home Centers, Inc.*, 506 S.E.2d 381, 383–84 (Ga.

Ct. App. 1998); *see also Kemp v. Rouse-Atlanta, Inc.*, 429 S.E.2d 264, 268 (Ga. Ct. App. 1993) (same). Nowhere in the underlying complaint are there allegations indicating that Robles used force or fear of force to subdue Hunter, let alone that Hunter's will was overcome by her fear of Robles. In fact, the allegations indicate the opposite, i.e., that Hunter was given and consumed two drinks that incapacitated her, making any threat or use threat of force by Robles unnecessary.

The pretrial order from the underlying case [Doc. No. 13-2], submitted by Hunter alongside her motion to dismiss, does not change this outcome.[5] Procedurally, the court may only consider a document attached to a motion to dismiss (without converting the motion into one for summary judgment) if the attached document is central to the plaintiffs' claim and its authenticity is undisputed. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). A document central to the complaint may be attached to the complaint or it may be incorporated by reference. *Id.* Unlike the underlying complaint and

---

[5] Hunter states, "The agreed-upon PTO recognizes that the claims alleged in the original complaint include false imprisonment." But Hunter and Five Paces Inn have separate sections in that pretrial order addressing the issues to be tried, and while Hunter lists false imprisonment as one of her issues, Five Paces Inn does not. So it is not clear to the court that the parties in the underlying suit actually agree on whether a false imprisonment claim is asserted.

relevant insurance policies, the pretrial order does not meet either of these requirements, so the court will not consider it. Furthermore, Georgia law makes it clear that an insurer's duty to defend is based on the allegations in the operative complaint, and that subsequent facts uncovered during discovery are irrelevant to this inquiry. *See Nat'l Tr. Ins. Co.*, 2018 WL 8949791, at *5 (explaining that an insurer's duty to defend and its duty to indemnify are separate and independent obligations; the duty to defend is based on the relevant policy language and the allegations of the underlying complaint, while the duty to indemnify is determined by the facts as they are established in the underlying action). Because Hunter's purported false imprisonment claim is not asserted in the underlying complaint it does not trigger a duty to defend on behalf of the plaintiffs.

Next Hunter claims that HSIC has a duty to defend Five Paces Inn under the liquor liability coverage in its policy which, like the general liability coverage, has a $1,000,000 limit. Because she was rendered defenseless by the alcoholic beverages served to her prior to the sexual assault, Hunter argues that those injuries cannot arise out of the assault, so the liquor liability coverage—not the assault and battery sublimit—applies. The plaintiffs disagree, claiming that the provision of the drinks was a

"secondary" act sufficiently related to the assault, so that this court should find it arose out of the assault.

Essentially, the parties disagree on the meaning of 'arising out of' as it pertains to the HSIC policy. Hunter interprets it narrowly, while the plaintiffs advocate for a broad interpretation. The parties find support for their respective positions because "arising out of" has different meanings when used in an insurance policy—one narrow and one broad—depending on the context:

> Under Georgia law, insurance policies are liberally construed in favor of coverage, and the conditions and provisions of contracts of insurance will be strictly construed against the insurer who prepares such contracts. Thus, while coverage provisions are construed broadly in favor of the object to be accomplished, exclusions in an insurance policy are interpreted narrowly, in favor of the insured. Accordingly, where the phrase arising out of is found in a coverage provision of an insurance policy, Georgia courts have construed that phrase broadly, holding that where an insurance contract provides that a loss must arise out of a specified act, it does not mean proximate cause in the strict legal sense but instead encompasses almost any causal connection or relationship. By contrast, however, when found in an exclusionary clause of an insurance policy, we have interpreted the phrase arising out of more narrowly, applying the but for test traditionally used to determine cause-in-fact for tort claims.

*Barrett v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 696 S.E.2d 326, 331–32 (Ga. Ct. App. 2010) (citations and quotations omitted).

Hunter's position is correct. Georgia courts treat sublimits—or any limitations on coverage—as exclusions when interpreting an insurance policy and interpret them narrowly. *Alley v. Great Am. Ins. Co.*, 287 S.E.2d 613, 616 (Ga. Ct. App. 1981) ("Exceptions, *limitations* and exclusions to insuring agreements require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms.") (emphasis added). And after narrowly construing the arising out of language, the court concludes that Five Paces Inn's liquor liability, if any, did not arise out of the assault. Hunter alleges she was incapacitated by the alcoholic beverages that Robles or another Five Paces Inn bartender served her prior to the sexual assault. So even if her friends had been able to reenter the bar and retrieve her, or if any other intervening act prevented Robles's subsequent assault, Hunter was already injured by this unwholesome alcoholic drink. Therefore, while the assault caused further injury, it is not the but-for cause of all her injuries.

In response, the plaintiffs argue, "Administering poison or any other harmful drug or substance to a person, with intent to inflict injury, amounts to assault and battery" under Georgia law, *Harris v. State*, 126 S.E.2d 693, 698 (Ga. Ct. App. 1962). So, even if the provision of the drinks did not arise

19

out of Roble's subsequent assault on Hunter, the plaintiffs claim it still falls within the assault and battery exception to the HSIC policy because providing the drinks was a discrete, separate assault. Therefore, that act would also be subject to the assault and battery sublimit.

Hunter, however, asserts that the plaintiffs are "narrowly construing [the underlying] complaint to shoe-horn it into their assault and battery exclusion" by "falsely assert[ing]" that Hunter alleges she was drugged. She claims that while her allegations may be read in that manner, they also sound of negligence and therefore would be subject to the full liability limits. She points out that the word "drugged" is nowhere to be found in the underlying complaint. Instead, it simply alleges that a bartender served Hunter a beer and a shot that he or another employee prepared, but that these "unwholesome" drinks were "not at all safe for consumption, as the drinks . . . would actually render her defenseless."

The court agrees. Because assault and battery are intentional torts, they require that the tortfeasor "inten[d] to inflict injury." *Harris*, 126 S.E.2d at 698. The underlying complaint, however, does not allege that Robles intended to harm or incapacitate Hunter when he gave her the drinks. In fact, Hunter does not even claim that Robles actually provided the drinks to her, alleging that one unnamed bartender provided her with a drink and a

blue shot which that bartender, or another employee, prepared. So while the complaint can certainly be read to support the plaintiffs' theory that Robles purposefully drugged Hunter with the intent to rape her, it could also be read to allege that he took advantage of her incapacity—caused by his own negligence or that of a coworker—and assaulted her only after the opportunity presented itself. And when the complaint can be read two ways— one finding coverage and one excluding coverage—the insurer has a duty to at least defend the lawsuit. *Elan Pharm.*, 144 F.3d at 1375 ("Although an insurer need not indemnify an insured for a liability the insured incurs outside the terms of the insurance contract, an insurer must provide a defense against any complaint that, if successful, might potentially or arguably fall within the policy's coverage."); *Penn-Am. Ins. II*, 490 S.E.2d at 376 ("Where the claim is one of potential coverage, doubt as to . . . [an] insurer's duty to defend should be resolved in favor of the insured.").

Because the allegations on the face of the underlying lawsuit set forth a claim of potential coverage, the question of the plaintiffs' "duty to defend should be resolved in favor of the insured." *Id.* HSIC is obligated to defend Five Paces Inn in the underlying lawsuit pursuant to its liquor liability coverage. Likewise, if the HSIC liquor liability policy limits become exhausted, Scottsdale has a duty to defend Five Paces Inn in the underlying

lawsuit, pursuant to its policy limits.[6] Accordingly, any aspects of the

plaintiffs' complaint regarding the duty to defend are hereby DISMISSED.

## C.   Duty to Indemnify

Finally, Hunter argues that the duty to indemnify is not yet ripe

because the underlying suit is still pending and there has been no finding of

liability. If the court were to rule on that issue, she claims it would be issuing

an impermissible advisory opinion. The plaintiffs disagree, claiming the court

should retain jurisdiction. There is caselaw on both sides of this issue.

The Eleventh Circuit "has cautioned against the exercise of jurisdiction

in suits for declaratory judgment when the question of the apportionment of

insurance coverage may never arise due to the lack of a judgment

establishing the liability of the insured." *Edwards v. Sharkey*, 747 F.2d 684,

686 (11th Cir. 1984). *See also Nationwide Mut. Fire Ins. Co. v. Dillard House,*

*Inc.*, 651 F. Supp. 2d 1367, 1373 (N.D. Ga. 2009) (O'Kelley, J.) (holding, "The

---

[6] With regards to Scottsdale, Hunter claims the designated premises endorsement in its policy—which excludes from coverage injuries that do not occur at the Five Paces Inn establishment—does not vitiate its duty to defend either, because even if the sexual assault occurred at a separate location as alleged by Scottsdale, Hunter was allegedly injured by an alcoholic drink on the Five Paces Inn premises prior to leaving. As discussed above, the court agrees. So while the designated premises endorsement may preclude coverage for injuries arising out of any off-premises actions, it does not absolve Scottsdale's duty to defend.

court should not pass on questions of insurance coverage and liability for

indemnification when the contingencies giving rise to them may never

occur."); *Employers Mut. Cas. Co. v. All Seasons Window & Door Mfg., Inc.*,

387 F. Supp. 2d 1205, 1211–12 (S.D. Ala. 2005) ("It is simply inappropriate to

exercise jurisdiction over an action seeking a declaration of the plaintiff's

indemnity obligations absent a determination of the insureds' liability to the

movants"); *Auto-Owners Ins. Co. v. Deerlake Homeowners Ass'n, Inc.*, 2:11–

CV–00215–RWS, 2012 WL 1038748, at *3 (N.D. Ga. Mar. 27, 2012) (holding

"the duty to indemnify is not ripe because the Underlying Suit is pending,

and that duty is dependent on the outcome of that case").

Conversely, the Eleventh Circuit in *First Mercury Ins. Co. v. Excellent

Computing Distributors, Inc.*, 648 F. App'x 861, 866–67 (11th Cir. 2016) (per

curiam), held that a district court may refuse dismissal of a declaratory

judgment action seeking a declaration of an insurer's duty to indemnify prior

to resolution of the underlying liability matter. But the *First Mercury* court

did not conclude that the district court should have exercised jurisdiction to

decide the insurer's duty to indemnify. *Id.* The panel stated, "Whether the

judgment in the federal declaratory action would settle the controversy is one

factor that a district court can consider in deciding whether to exercise its

discretion . . . [b]ut this factor is insufficient, standing alone, to close the

courthouse door; it must be weighed against the potential that an insurance coverage determination could serve a useful purpose in clarifying the legal relations at issue." *Id.* at 866 (internal quotations and citations omitted). The panel found that the district court "abused its discretion by failing to consider and weigh the potential benefits of a prompt liability determination." *Id.* at 867.

Given the procedural posture of the underlying case, and applying the *Ameritas* factors, it is unclear to the court how a ruling on the plaintiffs' duty to indemnify would be helpful to the parties. There have not been any findings of fact on material issues, much less a determination of liability or a judgment. The litigation could be resolved in favor of Five Paces Inn, who has filed a motion for summary judgment. But even if a verdict is rendered against Five Paces Inn, the facts proven at trial could affect which provisions of the policies are at issue for indemnification. And the state trial court is in a better position to make these determinations; it is more familiar with the underlying facts as they relate to liability and the issue is one of state law. Simply put, the possibility that Five Paces Inn will seek indemnification from HSIC, Scottsdale, or both, and the question of which particular provisions may be at issue, remain entirely hypothetical at this time.

Of course, retaining jurisdiction would avoid the need for separate litigation to resolve the plaintiffs' duty to indemnify. And knowing the answer to the indemnity question may well increase the likelihood of a settlement between the parties. But these considerations are present in the run of all declaratory actions with similar claims, yet district courts routinely dismiss the indemnity related claims as premature. No unique facts set this case apart from those.[7]

Based on the procedural posture of the underlying lawsuit, the most pressing determination is whether the plaintiffs have a duty to continue defending Five Paces Inn. That issue has been decided. For a finding of coverage, however, there must be a finding of liability, and Five Paces Inn's liability has yet to be determined. Accordingly, any aspects of the plaintiffs' complaint regarding the duty to indemnify are hereby DISMISSED WITHOUT PREJUDICE as premature.

## IV. Conclusion

Five Paces Inn's motion to dismiss [Doc. No. 13] for lack subject matter jurisdiction is DENIED.

---

[7] The court finds the remaining *Ameritas* factors—the state's interest in deciding the issues, whether the declaratory action is being used for an improper purpose, and whether there is an alternative, more effective remedy—have little bearing on this analysis.

Hunter's motion to dismiss [Doc. No. 12] is GRANTED. Because the complaint triggers coverage under the HSIC policy's liquor liability coverage both HSIC and Scottsdale have a duty to defend the underlying lawsuit, and the portions of the plaintiffs' declaratory judgment counts regarding their duty to defend are DISMISSED. Because the plaintiffs' duty to indemnify is not yet ripe, the portions of the plaintiffs' declaratory judgment counts regarding their duty to indemnify are DISMISSED WITOUT PREJUDICE.

Hunter's motion to stay discovery [Doc. No. 25], is DENIED AS MOOT. The clerk is DIRECTED to close this case.

**SO ORDERED** this 19th day of December, 2019.


/s/CHARLES A. PANNELL, JR.
CHARLES A. PANNELL, JR.
United States District Judge